TALLMADGE and others *vs.* THE FISHKILL IRON COMPANY and others.

Under the provisions of the revised statutes, declaring that the total amount of the debts at any time owing by an incorporated company shall not exceed three times the amount of the capital stock actually paid in, and that in case of any excess, the directors under whose administration the same may have happened shall, in their individual and private capacities, jointly and severally be liable for such excess, to the corporation, and in the event of its dissolution, to any of the creditors thereof, to the full amount of such excess, the liability of the directors of a company to the creditors of the corporation, in case of a violation of the statute, is not restricted to those creditors whose debts were contracted, or remained unpaid, while the excess of indebtedness existed; but attaches in favor of any creditor of the corporation, in case it shall appear upon investigation that at any time there has been an excess of indebtedness beyond the limit fixed by the statute.

But where it appears, in a suit brought by creditors of a corporation, to enforce the personal liability of the directors, under the statute, that at the time the corporation suspended its business some of the defendants were, themselves, creditors of the company, and that others of the defendants were personally liable for its debts, on account of which they have since been obliged to make ad-

Tallmadge *v.* The Fishkill Iron Company.

vances, they cannot be compelled to pay the whole amount of their liability without reference to such advances; but are entitled to have those advances considered as payments made by them on account of their individual liability, and to have them credited thereon, as against the creditors of the company, since its dissolution.

The limited personal liability of directors, under the statute, is at an end when they have paid, or been charged with, debts to an equal amount. They can be compelled to pay the amount of their liability but once; and whether they pay that amount voluntarily, in discharging the debts of the corporation, or whether they are obliged to pay it upon suit brought by the corporation, or any of its creditors, after having paid it, they may set up such payment as a defence against any further liability.

Where a debtor has a set-off equally applicable to two demands against him, it is not for him to elect which of the demands he will satisfy by his set-off; but the court will direct the application, according to the equities between the parties.

IN EQUITY. On the 25th day of April, 1833, an association was formed between the individuals who were defendants in this suit and several other persons, for the purpose of purchasing a site, erecting a furnace, and conducting the business of raising ore, making iron, flouring wheat and other grain, sawing timber, &c. It was agreed that the capital stock of the association should be $20,000. Five of the associates were appointed trustees to take the title of the real estate to be purchased. An agent was appointed, to transact the business of the association, at a yearly salary of $1000. A committee of the associates was also appointed, to obtain an act of incorporation. Real estate to the amount of about $20,000 was purchased and conveyed to the trustees pursuant to the provisions of the articles of association. On the 24th of March, 1834, an act was passed by the legislature, incorporating "The Fishkill Iron Company," with a capital of $100,000. Under the provisions of the act, books of subscription were opened on the 17th of April, 1834, when the whole amount of stock was subscribed by the stockholders in the association which had been formed in April, 1833, each stockholder subscribing for five times the amount of the stock held by him in the association. At a meeting of the directors named in the act of incorporation, held on the same day, it was resolved, " that the Fishkill Iron Company will purchase

Tallmadge *v* The Fishkill Iron Company.

and take a conveyance of and from James Emott, James Hooker, Solomon V. Frost, Ira Spooner and Samuel B. Halsey, trustees of a private company and association formed by Nathaniel P. Tallmadge, James Emott, James Hooker, Samuel B. Halsey, Rufus Fuller, Nathaniel P. Perry, Ira Spooner, Uriah Gregory & Co., Solomon V. Frost, Aaron Frost, Walter Cunningham, Tunis Brinckerhoff, Andrew Stockholm, and Richard DeWitt, all of the property now contracted for, held and owned by said trustees of said private, company and individuals as such trustees, at and for the price and sum of *one hundred thousand dollars,* that being the price and sum agreed upon by and between said trustees and the said above named private company and individuals owning the same, of the one part, and the said Fishkill Iron Company of the other part, as and for the consideration and purchase money for the same upon said sale and conveyance thereof from said private individuals to said Fishkill Iron Company. *The said Fishkill Iron Company assuming and paying all the debts, obligations, liabilities and responsibilities of said trustees heretofore entered into or incurred by them for said private company and individuals as aforesaid."* In pursuance of this resolution, all the property of the association was conveyed by the trustees to the corporation. The business of the corporation was continued until June, 1840, when, having become insolvent, and judgments having been recovered against it, to a large amount, its business was suspended, and shortly afterwards its property was sold upon execution.

In July, 1842, the bill in this cause was filed by the plaintiffs, as creditors of the Fishkill Iron Company, to obtain satisfaction of seven judgments which had been recovered by them severally against the corporation, in 1840 and 1841, amounting in the aggregate to $2962,20, upon which judgments executions had been issued and returned unsatisfied. The debts upon which the judgments had been recovered were contracted in 1839 and 1840. Besides the corporation, five of the directors, James Emott, Aaron Frost, Solomon V. Frost, Isaac R. Adriance and Tunis Brinckerhoff, were made defendants.

The bill stated that, although scrip for the whole amount of the stock was issued to the stockholders, in fact not more than $20,000 of the capital was ever paid by the stockholders; that when the plaintiffs' debts were contracted, and when they recovered their judgments respectively, the debts and liabilities of the corporation exceeded three times the amount of its capital stock paid in ; that the individuals who are made defendants were directors under whose administration the excess of indebtedness happened, and it was charged that thereby such directors became liable for the payment of the plaintiffs' debts. The bill prayed that the defendants, as directors, might be decreed to pay the amount of the plaintiffs' judgments, with interest and costs, and for general relief.

The bill was taken as confessed by the Fishkill Iron Company. Each of the other defendants answered separately. The answer of James Emott stated that he was a stockholder to the amount of $10,000—that in the spring of 1835, he advanced for the use of the company $15,000—to secure which he received from the company a bond and mortgage, on the 13th of July, 1837. On the 14th of April, 1841, the mortgaged premises were sold under a decree of foreclosure, subject to prior incumbrances, and after applying the proceeds of the sale, there remained a deficiency of $12,942,67. The answer further stated, that having, with other directors and stockholders, been sued for a debt due from the company to one Storm, Emott, in June, 1841, paid towards that debt $120—and that in October or November, 1841, he paid on account of a debt which one Sleight held against the unincorporated association, and which had been assumed by the company, about $1200 ; and had incurred costs in and about the suits brought against him for these debts to the amount of about $200.

The answer of the defendant Aaron Frost, stated that he was a subscriber for stock to the amount of $5000—that he was chosen a director in July, 1837, and continued to be a director until the company suspended business. In March, 1840, he became endorser upon the notes of the company to the Dutchess County Bank for $23,500, for the payment of which he still

remains liable. On the 24th of December, 1839, he transferred $2500 of his stock to Charles C. Alger, and still holds the remaining $2500.

The answer of the defendant Solomon V. Frost, stated that he was a subscriber for stock to the amount of $5000. On the 10th day of January, 1840, he, with other persons, endorsed the note of the company to the Dutchess County Bank for $7000, and has since paid one third of that note, amounting to $2333,-33. That he had also paid, on account of the debt to Sleight, before mentioned, $376,88—that in 1836, he sold $900 of his stock, and still holds the residue.

The answer of the defendant Isaac R. Adriance, stated that in 1837 or 1838, he purchased of John W. Brinckerhoff $2500 of the stock of the company, for which he paid him $1000— that in January, 1838, the company purchased certain lands of one Parks, on account of which three notes for $2000 each were given by the company—these notes were also signed by this defendant and others—that having, with Tunis Brinckerhoff, been sued upon two of these notes, they paid the amount due, being $6853, besides costs to the amount of $139, each paying one half—that he also paid to one Storm, a creditor of the company, in 1840, about $112—that, being an endorser upon the $7000 note to the Dutchess County Bank before mentioned, he paid one third of that note, amounting to $2333,33— that, being a farmer, he had furnished produce for the use of the company, for which, on the 21st of February, 1839, the company gave him their note for $800, which he still holds—that on the 10th of April, 1839, he sold the company a yoke of oxen and received their note for $120, which he also holds.

The answer of the defendant Tunis Brinckerhoff, stated that he was a subscriber for stock to the amount of $2500, which he still holds; that he was an endorser upon the $7000 note to the Dutchess County Bank, one third of which he had paid; that he also, having signed the note to Parks, had paid one half the amount of those notes, together with the costs.

The cause was heard upon pleadings and proofs, before the Hon. Charles H. Ruggles, then vice chancellor of the second

circuit, who decided that not more than $20,000 of the capital stock of the company had been paid in, and that if at any time while the debts to the plaintiffs, or any of them, remained unpaid, the debts which the company owed exceeded $60,000, the defendants, being directors at the time, were in their individual and private capacities, jointly and severally liable to the plaintiffs for the payment of these debts to the amount of such excess; but that they were only so liable to those plaintiffs whose debts were contracted or remained unpaid while such excess existed; that in ascertaining the amount of such excess the debts due from the corporation to the defendants and other directors, were to be taken into the account as well as debts due to other persons and corporations. A decree was accordingly entered, on the fifth day of April, 1845, declaring the Fishkill Iron Company dissolved, and declaring the liability of the defendants upon the principles above stated. A reference was directed, to ascertain the amount of the excess of the indebtedness of the corporation; and the master, in taking the account of such indebtedness, was directed to exclude all debts secured by mortgage upon the lands of the company, and for which there was no remedy against the company except by proceeding to enforce the lien of the mortgage. All other questions were reserved until the coming in of the report. From this decree, except so much of it as declared the corporation dissolved, all the defendants except the Fishkill Iron Company, appealed.

*James Emott, Jr. & J. W. Brown,* for the defendants.

*H. S. Dodge,* for the plaintiffs.

*By the Court,* HARRIS, P. J. I agree with the learned vice chancellor that, as against creditors, the transfer of the property, owned by the stockholders of the corporation on the 17th of April, 1834, to the corporation, could only be regarded as a payment upon the stock subscribed, to the extent of its value. The resolution of the directors to accept the property in full payment of the stock subscribed, was illegal and void as to the

creditors of the corporation. They had no power to exempt themselves, or the other stockholders, from the payment of the whole amount of the stock subscribed. I should have been better satisfied with the decree, in this respect, if, instead of fixing the value of the property thus transferred by the unincorporated association to the corporation at $20,000, it had directed a reference to ascertain the actual value of the property at the time of the transfer. But the defendants have no right to complain of this part of the decree. It is quite as favorable to them as the proofs in the case warranted.

I also concur with the vice chancellor in the principle by which it is to be determined whether the statute, which restricts the indebtedness of an incorporated company to three times the amount of its capital stock actually paid in, has been violated. The evils, against which this statute was intended to operate, are equally great, whether the indebtedness is to the directors themselves, or to other persons. The proper inquiry, therefore, is not to whom the debts are due, but what is the amount of indebtedness. The language of the statute, (1 *R. S.* 604, § 3,) is, *" the total amount of the debts which any incorporated company shall at any time owe, shall not at any time exceed,"* &c. If it shall be ascertained that, *" at any time,"* such debts have exceeded the limit of " three times the amount of the capital stock actually paid in," then the next inquiry is "under whose administration such excess has happened." This being ascertained, the liability is determined. Having determined who is liable, we are next to inquire who may enforce the liability. The section provides that the corporation itself, so long as it remains undissolved, shall have the *power to enforce this liability. The amount of the excess becomes at once a debt due from the directors, who are declared to be liable to the corporation. To maintain an action for such debt, it is only necessary to show the fact that such excess " at any time" existed, and that it happened " under the administration" of the defendant as a director. He can only defend himself against such liability by showing his dissent entered at large on the minutes of the directors, at the time, or that he was not present when the excess

of indebtedness was incurred.   If the liability has been incurred but has not been enforced before the dissolution of the corporation, then it may be enforced by "*any creditor*" of the corporation.   No lapse of time, no statute of limitations, will avail to bar the liability.   Upon the dissolution of the corporation, if there be a debt unpaid, its transactions through its entire history, however extensive the period of that history, may be investigated, and if, upon such investigation, it shall appear that " at any time" there has been an excess of indebtedness beyond the limit within which the legislature has confined it, the directors under whose administration such excess happened, remain liable for the amount, with interest.   It is a debt due to the corporation, and, as much as any other debt, is applicable to the payment of any debt against the corporation.   I think, therefore, the vice chancellor too much restricts the meaning of the term "*any creditors*," as used in the section of the statute under consideration, when he confines it to those creditors whose debts were contracted or remained unpaid while the excess of indebtedness existed.   I can see nothing either in the language of the statute itself, or in the object which the legislature evidently designed to effect by the provisions of this section, which requires such a limitation to the term "any creditors."   It is certain that if an action were brought by the corporation itself, to enforce the liability, it would be no defence to the action, to show that all the debts which were contracted or remained unpaid when the liability was incurred, had subsequently been extinguished.   The corporation would still have the right to collect the amount, and apply it to the payment of any of its debts.   I can see no reason why any creditor who might, before the dissolution of the corporation, have participated in the benefit to be derived from such an action, may not, after the dissolution of the corporation, maintain the action himself, to enforce the same liability.

Another question arises in this case, of more importance to the parties.   It appears that some of the defendants, at the time the company suspended its business, were themselves creditors, to a large amount, and that others of the defendants were personally liable for its debts, on account of which they have

Tallmadge *v.* The Fishkill Iron Company.

since been obliged to make large advances. Assuming that the defendants are liable under the provisions of the statute already noticed, for an excess of indebtedness beyond the limit prescribed, should they be compelled to pay the whole amount of such liability, without reference to the advances they have made for the company? I think not. If they have, as directors, incurred individual liabilities to the company, under the provision of the statute referred to, I can see no reason why they should not be allowed upon those liabilities for any advances made by them for the benefit of the company. Suppose an action had been brought, as it might have been, before the dissolution of the corporation, by the corporation itself, for the same excess which the plaintiffs now seek to recover. Would any one doubt the right of the defendants to have their debts against the company allowed against the amount of their statutory liability? Would it be pretended that the excess for which they had become liable must be paid to the corporation, only to be recovered back by a suit against the corporation for its indebtedness to the defendants? The liability of the defendants was in no respect changed by the dissolution of the corporation. Its creditors could only enforce the liabilities which the defendants had already incurred. If, therefore, the defendants, who had made advances for the benefit of the company, were entitled to have those advances considered as payments on account of their individual liability, as against the corporation, they are equally entitled to such allowance as against the creditors of the corporation, since its dissolution.

This view of the question is sustained by the court for the correction of errors, in *Briggs* v. *Penniman,* (8 *Cowen,* 387.) In that case, the defendants were stockholders in the Cambridge Farmers' Woollen Manufactory, a corporation for manufacturing purposes, formed under the act of the 22d of March, 1811. Upon its dissolution, being insolvent, its stockholders became liable for its debts to the extent of their respective shares of stock. Penniman, a creditor of the company, filed his bill to enforce that liability, The defendants set up, in defence, that they had severally made advances for the company, for

which it was indebted to them. One of them claimed that the company owed him a debt of $1500, besides what was due for advances. The chancellor directed a reference to ascertain the amount of the defendants' liability, and directed the master, upon the reference, to allow the defendants respectively such sums as they had paid on account of the debts of the company *after its dissolution.* Upon the appeal from this decree, Spencer, senator, says, " I confess I can see no reason why the credits for sums advanced by the appellants, should be restricted to a period *since the dissolution* of the company. The members of the company might *bona fide* advance money, as they allege they have done, to carry on the business of the corporation, and they are equally entitled with any other creditors, to be indemnified from the funds of the company, or from the individual liability of the stockholders." In this case, the liability of the stockholders, like that of the directors in the case under consideration, was created by statute, and was limited. It could only be enforced after the dissolution of the corporation, and, of course, only by the creditors of the corporation, while in the case before the court, the liability is primarily to the corporation. If then in such a case, the stockholders, when called upon by creditors to pay the amount with which they are chargeable by statute, may have deducted from their liability, the amount of their advances for the company, I think the defendants, who have incurred a similar liability, should also be entitled to have credited against that liability, the amount of their advances for the company. In either case, the law, for the protection of creditors, and to induce greater carefulness in the management of the affairs of the corporation, adds the limited personal liability of the stockholders or directors to the effects of the corporation itself. In either case, such limited personal liability is at an end, when the stockholder or director has paid or been charged with debts to an equal amount. He can be required to pay the amount of his liability but once, and whether he pays that amount voluntarily, in the discharge of the debts of the corporation, or whether he is compelled to pay it upon suit brought by the corporation

or any of its creditors, having paid it, he may set up such pay-ment as a defence against any further liability.

But the defendants are also liable for a portion of their stock, not paid in. As against the amount for which they are sever-ally liable on this account, they have a right to set off any in-debtedness of the company to them. According to the view of the vice chancellor, from which I do not dissent, the plain-tiffs are not entitled to recover in this suit, from the defendants, any thing on account of their liability for unpaid stock. Under such circumstances, it seems but just, that the defendants' set-off should first be applied to that part of their liability which the plaintiffs do not reach by the decree in this suit. I understand the rule on this subject to be, that where a debtor has a set-off equally applicable to two demands against him, it is not for him to elect which of the demands he will satisfy by his set-off, but the court will direct the application according to the equi-ties between the parties. (*Collins* v. *Allen*, 12 *Wend*, 356.)

1 think the decree appealed from should be so modified, as to direct a reference to ascertain the amount due from the defen-dants severally, on account of their stock, and also the amount due from them jointly and severally for any excess of indebted-ness incurred by the corporation, under their administration, beyond the limit prescribed by the statute. The referee should also be directed to ascertain the amount of credits to which each of the defendants is entitled on account of any indebtedness of the corporation to him for advances or liabilities made or in-curred for its benefit, whether before or after the dissolution. That part of the decree which declares the liability of the de-fendants for the payment of the plaintiffs' debts, to the amount of the excess for which they shall be found liable as directors, should either be omitted entirely, or so modified as to declare the defendants only liable to the extent of the balance which may be found against them upon the principles above stated. As the decree is only interlocutory, it seems to be unnecessary to declare such liability at all. If they elect, I think the defen-dants should also be permitted to have the report of the referee upon the actual value of the property transferred by the unin-

corporated association to the corporation, with a view to ascertain, more satisfactorily, the amount with which they are yet justly chargeable on account of their stock, as well as the amount of excess for which they are liable as directors. A provision should be inserted in the decree, allowing the pleadings and proofs in the cause to be used upon the reference.

It may not be improper to add, that while I concur with the vice chancellor, that the bill is properly filed by the plaintiffs as creditors of the corporation, I do not think the plaintiffs have thereby, necessarily, acquired a preference over other creditors. Any other creditor would, I apprehend, be entitled to come in and insist upon a ratable distribution of all the funds liable for the payment of the debts of the company, upon a bill framed for that purpose. (*Bank of Poughkeepsie* v. *Ibbotson,* 24 *Wend.* 479. *Briggs* v. *Penniman,* 8 *Cowen,* 392.) I am inclined to think too, that the defendants may, by a cross-bill, bring all the necessary parties before the court, for the purpose of having a final determination of the rights of the parties, directors, stockholders and creditors, in respect to the affairs of the corporation. But these are questions which it is not necessary now to consider.

Neither party having succeeded entirely upon this appeal, it is not a proper case to give costs to either, as against the other.

