CHOUTEAU, HARRISON & VALLE, Defendant in Error, *v.* OWEN M. DEAN, Plaintiff in Error.

May 13, 1879.

1. Oral testimony as to what was said or done at a meeting of the directors of a corporation is not admissible to prove a contract between the corporation and a stockholder for the surrender of stock and the release of the stockholder.

2. The capital stock of a corporation is a trust-fund created by the issue of stock in good faith, and stock cannot be issued without receiving therefor, in some shape, a reasonable equivalent for the par value of the stock.

3. Where $10,000 of stock is issued by a corporation to an officer thereof, in consideration of services rendered by him valued at $2,500, the stock being taken at its market value of twenty-five per cent, such officer thereby becomes a stockholder, and, as such, liable to creditors of the corporation

to the extent of the difference between the value of his services and the par value of the stock.

4. The stock having been issued to him and receipted for in the usual form, and the transaction entered upon the corporation books, he cannot, by a voluntary cancellation and return of the certificates, annul the contract without the consent of the stockholders.

5. Nor could the corporation voluntarily consent to the surrender so as to release the stockholder from his contingent liability to creditors for the corporation's debts.

ERROR to St. Louis Circuit Court.

*Affirmed.*

JOHN A. HARRISON, for plaintiff in error: The creditor deals not on the credit of the corporators, and therefore the personal responsibility of stockholders is inconsistent with the nature of a body corporate. — *Meyers* v. *Irwin*, 2 Serg. & R. 371; Ang. & Ames on Corp. 31, note 4. The stock in question having been issued to defendant as full paid, with the agreement that he should not be called upon to pay any greater price therefor than he actually did pay, there can be no recovery. — *Robertson* v. *Sibley*, 10 Minn. 323; *Phelan* v. *Hazzard*, 6 Cent. L. J. 109; *Spear* v. *Crawford*, 14 Wend. 20; *Palmer* v. *Lawrence*, 3 Sandf. 161, 164; *Seymour* v. *Sturgess*, 26 N. Y. 134; *Northern R. Co.* v. *Miller*, 10 Barb. 260; *Railroad Co.* v. *Kennerly*, 12 Conn. 509; *Boset* v. *Railroad Co.*, 13 Ill. 504, 511. The trial court also erred in holding that defendant could be made liable although he had in good faith paid full market or real value of the stock in controversy. The company had the right to deal with the stock as with any other property, and to regard its *real* rather than its fictitious or nominal value.—*New Albany* v. *Burke*, 11 Wall. 96, 105; *Burke* v. *Smith*, 16 Wall. 394; *Otter* v. *Brevoort Petroleum Co.*, 50 Barb. 247; *Pondville Co.* v. *Clark*, 25 Conn. 233; *Catlin* v. *Eagle Bank*, 6 Conn. 233.

J. H. WIETING, for defendant in error: 1. That the facts in this case worked a dissolution of the corporation, for the purposes of a proceeding like the present, see *Moore* v.

*Whitcomb*, 48 Mo. 543; *State Savings Assn.* v. *Kellogg*, 52 Mo. 583, and cases cited; *Perry* v. *Turner*, 55 Mo. 418; *Slee* v. *Bloom*, 19 Johns. 456 (the leading case). 2. That in such case the stockholder can be sued directly for the company's liabilities existing at the date of dissolution, without previous suit against the corporation, see *State Savings Assn.* v. *Kellogg*, 52 Mo. 583; 1 Wag. Stats. 293, sect. 22. " The directors of a company cannot, as against its creditors, discharge the liability of a stockholder by receiving property at an exaggerated valuation. The transfer [of the property] is to be regarded as payment only to the extent of the *actual value* of the property." — *Tallmadge* v. *Iron Co.*, 4 Barb. 382; *Van Cott* v. *Van Brunt*, 2 Abb. N. C. 283; *Sawyer* v. *Hoag*, 17 Wall. 610; *Upton* v. *Tribilcock*, 1 Otto, 45; *Upton* v. *Sanger*, 1 Otto, 56–60; *Webster* v. *Upton*, 1 Otto, 65. The directors of a corporation cannot release a stockholder from his individual liability, as against existing creditors, by accepting a surrender of his stock. — *Mann* v. *Pentz*, 2 Sandf. Ch. 257; *Payne* v. *Bullard*, 23 Miss. 88; *Slee* v. *Bloom*, 19 Johns. 456.

LEWIS, P. J., delivered the opinion of the court.

The Carondelet Railway Company was incorporated in May, 1874, with an authorized capital stock of $300,000, divided into six hundred shares, at $50 each. It became indebted to the plaintiff, also a corporation, upon certain coupons amounting to $2,050, and in April, 1876, became insolvent and was dissolved. This suit was instituted under Wagner's Statutes, p. 293, sect. 22, against the defendant as the holder of unpaid stock to the amount of $10,000.

It appears that prior to August 21, 1874, the defendant was a director of the company. On that day he was elected secretary and treasurer. The position had always been a salaried one, and it was verbally agreed between defendant and the president and other officers, that he was to be paid

for his services. On June 11, 1875, it was agreed among the officers of the corporation that the defendant, the president, and several of the directors should be paid in stock of the company for services rendered. The defendant estimated his services at about $2,500 ; but, inasmuch as the stock was really worth only twenty-five per cent of the nominal value, he made out a bill for $10,000, which was allowed by the board of directors, and "paid-up" stock to that amount was directed to be issued and delivered to him. The defendant afterwards addressed a letter to the board, asking a reconsideration of his account, "which was altogether too much, and would not have been presented in that amount but for the understanding that the same was to be paid in the paid-up capital stock of the company." The writer requests that in lieu of the stock he be paid a fair compensation in cash for his services ; and adds, that if the board should not deem it best to make the desired change, then he requests a delivery of the stock to him in due form, "full paid, and free from any and all assessments thereon, or for further or other payments thereon or therefor, or any part thereof." The board, however, refused to make any change, and ordered the issuance of the stock. The certificates were delivered to the defendant and he signed the stub receipts for them on July 19, 1875. The transaction was entered upon the cash-book, which was the only book wherein such entries were made. On August 21, following, the defendant marked his certificates "cancelled" across the face, and returned them to the then secretary of the company, entering, at the same time, on his account in the cash-book a credit for the shares as "returned to company and cancelled." On the minutes of the board, bearing date August 27, 1875, appears this entry: "President Dean reported that he had cancelled the 200 shares of stock issued to him for services, and returned the same to the company." No other action having reference to the same subject appears in the minutes. The question to be determined is whether,

for the purposes of this suit, the defendant can be treated as a holder of unpaid stock at the dissolution of the corporation, in April, 1876.

The court refused to allow the defendant, as a witness, to answer his counsel's question, of what was said or done in the meeting of the board on August 27, that did not appear in the minutes. There was no error in this refusal. Nothing short of a valid contract between the corporation and the defendant could avail to consummate legally the intended surrender of stock. Such a contract, if directly made by the board of directors, could not be proved otherwise than by the record of their proceedings, or by a properly authenticated instrument.

It is the settled American doctrine that every corporation holds its capital stock as a trust-fund for the benefit of its creditors. The fund, however, does not exist until the stock is issued to shareholders. Up to that point there is a mere possibility or privilege of creation of stock. When a share is issued, if the price be paid in cash, so much is added to the working capital, thereby enhancing the creditor's security. If the price be not paid, the purchaser's indebtedness may be looked to for the like effect. In either case, there is a tangible asset to which creditors may resort under the forms of law. The directors, who may be aptly styled the trustees, have no right to destroy the fund by giving away the stock, or, which is the same thing, by disposing of it for an insignificant return. Its value in their hands, or rather the value of the creative privilege, is fixed by the charter. When they issue stock to an individual holder, there must be secured to the corporation, in some shape, an equivalent at so much per share, in accordance with the fundamental condition of the privilege. It is not now questioned that a corporation may issue its stock by way of payment in the purchase of property. This is on the principle that there is no need for the roundabout process of first issuing the stock for money, and then paying the

money for the property.    But it is necessary that the property so taken be considered reasonably worth the par value of the stock paid for it.    *Tallmadge* v. *Iron Co.*, 4 Barb. 382 ; *Boynton* v. *Hatch*, 47 N. Y. 225.    The directors have no more right to accept property worth manifestly less than the face-value of the stock, than they have to take depreciated or counterfeit currency as an equivalent on the same face-value.    These principles are alike applicable to the purchase of services with an issue of stock. Many cases are reported in which shareholders held "full-paid" stock, but, because the corporation had received no valuable or lawful consideration for the issue, the owner was held, in favor of creditors, to all the responsibility of a subscriber who is in arrear for unpaid stock.    There is no reason why a like rule should not be applied, according to circumstances, to the case of a gross disproportion between the face-value of the stock and the consideration paid for it.

The defendant in this case does not pretend that his services were worth more than $2,500, for which he was paid $10,000 in stock of the corporation.    The arrangement by which his account was made out for $10,000 was confessedly a mere disguise, intended to compensate the reduced market value of the stock.    But such disguises can never avail to evade the law, which deals with the realities of a transaction, and not with its pretences.    Unless, therefore, it can be shown that the defendant never in fact became a stockholder, or that he was not such, within the meaning of the statute, when the corporation was dissolved, he must be held answerable to creditors as a stockholder in arrear, to the extent of the difference between the value of his services to the company and the nominal amount of the stock received for them.

There can be no question that the contract was completed whereby the defendant became a stockholder in the company.    The certificates were issued to him, he gave his

receipt for them, and the usual entries were made in the books with his consent. Nothing more was needed. But it is claimed that the defendant's cancellation and surrender of his certificates terminated his relations with the company. Nothing could be more futile. The relation between a shareholder and a corporation is one of contract. It cannot be dissolved by one party without the consent of the other, unless in pursuance of a special reservation in the charter, or in the terms of the subscription. It does not appear that the corporation ever consented to the supposed surrender. Indeed, it had no authority to do so with any legal effect as against creditors. There is such a thing as an authorized forfeiture, in the option of the company, for non-payment of assessments. But even this is not allowed if the corporation be insolvent, and the forfeiture, by releasing the stockholder from further liability, will be prejudicial to creditors. Nor can a corporation, in any case, voluntarily release a stockholder so as to discharge him from his contingent liability for the company's debts. *Slee* v. *Bloom*, 19 Johns. 456 ; *Upton* v. *Tribilcock*, 91 U. S. 47 ; *Bedford, etc.* v. *Bowser*, 48 Pa. St. 37 ; *Burke* v. *Smith*, 16 Wall. 394. True, this doctrine, as is said by the author of a recent and admirable treatise, "does not extend so far as to annul a *bona fide* compromise of a question fairly in dispute, made between a corporation and one whom it claims to hold liable as a stockholder, nor a compromise which becomes necessary to save the company from hopeless embarrassment." Thomp. on Stock., sect. 202. But there is in this case no foundation for any such qualification. In every possible aspect of the matter, the cancellation of the certificates amounted to nothing. The certificates were not the stock. They were merely documentary evidence of its existence. All the duties, privileges, and responsibilities of a stockholder may be fully vested in him, where no certificate has ever been issued. *Schaeffer* v. *Insurance Co.*, 46 Mo. 248.

The questions raised upon this record must therefore be decided adversely to the appellant, and the judgment will be affirmed.   All the judges concur.