## SHICKLE et al. v. WATTS, *Appellant*

1. **Corporation:** CAPITAL STOCK: CREDITORS. The capital stock of a corporation being a trust fund for the benefit of its creditors, it follows that where an agreement is entered into between a contractor and a corporation, whereby the former is to perform work for, or furnish material to, the latter, and to take unpaid stock in part or full payment, such contractor can only charge the reasonable market value for the labor or material thus given in exchange for stock.

2. ———: ———: ———. All agreements by the corporation to pay more than such reasonable compensation will be disregarded when the rights of creditors intervene. And this is true, even when no fraud is proved.

3. ———: UNPAID STOCK: CREDITORS. While the stockholder may, ordinarily, when called on to pay the unpaid balance on his stock, set off against the corporation any demand he may hold against it, yet when the corporation becomes insolvent, the rule changes, and the creditor stockholder cannot apply his unpaid balance in exclusive satisfaction of his own claim.

Shickle v. Watts.

4. **Unpaid Stock:** PROCEEDING AGAINST STOCKHOLDERS : EQUITY. Where the creditor of an Illinois corporation recovered judgments at law in that state, had executions issued which were returned *nulla bona*, the whole assets of the corporation being in the hands of a receiver, equity is the proper *forum* in which to proceed in this state against stockholders resident here.

5. **Equity :** FAILURE TO PLEAD REMEDY AT LAW. Where one proceeded against in equity does not plead a remedy for plaintiff at law, he cannot thereafter invoke such remedy as a defence.

6. **Unpaid Stock :** LIABILITY OF STOCKHOLDER. A stockholder is liable for unpaid stock, and this is true whether he be a purchaser or an original subscriber.

7. ———— : DISSOLUTION OF CORPORATION. Where the dissolution of a corporation sufficiently appears *aliunde*, it is not necessary to obtain a judgment dissolving the corporation before proceeding under the statute against a stockholder for unpaid stock.

8. **Foreign Judgments :** INTEREST. Section 725, Revised Statutes, authorizing the allowance of interest on judgments from the date of their rendition, embraces judgments of sister states when the foundation of proceedings in our courts.

9. **Unpaid Stock.** Unpaid stock being a trust fund, its character remains unchanged, and it awaits demands which may arise against it, precisely as if it were paid into the corporation instead of remaining in the hands of the person, who still remains a debtor to the corporation to the extent of his unpaid balance.

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

AFFIRMED.

*M. McKeag* for appellant.

(1) The liability of a stockholder to a corporation for unpaid stock only exists where the stockholder has subscribed for a certain number of shares of its capital stock of a certain par value, or where a person has purchased shares which have been subscribed for and has had the same transferred to him. In the above

cases, the liability is to the corporation and is very different from that to the creditor created by the statute. The creditor cannot seek relief against the stockholder unless he first shows that he has exhausted his remedy at law against the officers, in endeavoring to coerce the collection or contract liability. *Jones v. Newhall*, 115 Mass. 244. The stock held by Watts was never subscribed for by him or by any one else, but was issued to him under a contract with the corporation as fully paid up and there is no liability on his part in this action. *Patterson v. Lyne*, 112 Ill. 196; *Janney v. Spedden*, 38 Mo. 390. (2) When stock certificates are issued to a stockholder long anterior to the transaction of the creditor with the corporation, and the stockholder has paid full price and consideration to the corporation, as agreed upon between him and it, and the creditor knew of this transaction, or might have known of it by due diligence, he cannot have recourse to the stockholder. *Phalen v. Hazard*, 5 Dillon, 45. (3) The court below erred in permitting the plaintiff to introduce testimony as to the value of the gasworks constructed by defendant, as there was no testimony offered to impeach the good faith of the contract entered into between Watts and the corporation. *Bank v. Tracr*, 16 N. W. Rep. 120; *Coit v. Co.*, 14 Fed. Rep. 12. (4) The court erroneously heard evidence offered by plaintiff at the trial and considered the same in the determination of the cause, and refused to rule on the same when objected to by defendant. *Hannibal v. Moore*, 37 Mo. 341. (5) It was error to permit the plaintiff to sue the stockholder in equity on a foreign judgment. *Claflin v. McDermott*, 12 Fed. Rep. 375; *McElmoyle v. Cohn*, 13 Pet. 312. (6) It was error to allow interest on the judgments. *Thompson v. Morrow*, 2 Cal. 99; *Cavender v. Guild*, 4 Cal. 251. (7) The reply of plaintiffs contained a departure from the original cause of action and that part of it should have been

stricken out. *Cravens v. Gilliam*, 73 Mo. 528; *Huston v. T. S. W.*, 56 Mo. 419; *Bauer v. Wagner*, 39 Mo. 385.

*T. A. Post* for respondents.

(1.) Defendant, Watts, is liable in this proceeding for the full amount of plaintiffs' claim. The cash proceeds of bonds, together with stock of the East St. Louis Gas Light Company, measured at its face value received by Watts, was in excess of the value of the labor and material furnished and services rendered by him in. building the gasworks, to an amount far greater than the total of plaintiffs' claim. (2) Even on the terms shown by his contract with the gas company, and by its corporate records, to have been agreed on between Watts and the company, as to the credit to be allowed on his stock, he would still be in arrears for more than the amount of plaintiffs' claim. (3) So far as the creditors of the East St. Louis Gas Company are concerned, Watts was bound to render in money, or labor and material, or services, a fair equivalent for the stock issued to him by the company, and held by him when suit was brought. The unpaid shares of stock of a corporation are a trust fund set aside for the benefit of its creditors, and they have a right to look to the full measure of the stock obligations for payment. *Chouteau v. Dean*, 7 Mo. App. 214; *Upton v. Tribilcock*, 91 U. S. 45; *Pickering v. Templeton*, 2 Mo. App. 424; Thompson on Liability of Stockholders, secs. 127, 201; *Boynton v. Hatch*, 47 N. Y. 225; *Talmage v. Iron Co.*, 4 Barb. 382; *Carr v. LeFevre*, 27 Pa. St. 413. (4) The promise on behalf of the company, if binding on it, to pay Watts eighty-three thousand dollars for the works, cannot avail him. He might make a contract with the company to receive eighty-three thousand dollars for less than fifty thousand dollars worth of material, and. work, and services rendered, but he could not contract.

away his liability to the company's creditors. *Chouteau v. Dean*, 7 Mo. App. 214; *Pickering v. Templeton*, 2 Mo. App. 429; *Boynton v. Hatch*, 47 N. Y. 225; *Tallmadge v. Iron Co.*, 4 Barb. 387; *Osgood v. King*, 42 Ia. 483; *Railroad v. Felds*, 10 Ind. 190. (5) Plaintiffs were not compelled to institute direct proceedings against Watts to set aside his contract in order to defeat it as a defence against his stock liability to his creditors. Even if the court should find that the amount to which defendant, Watts, is entitled on his contract offsets the amount of his indebtedness on his stock, he is nevertheless bound to pay up his indebtedness, and may thereafter claim his *pro-rata* share by a proceeding for contribution. *Sawyer v. Hoag*, 17 Wallace, 610. (6) Plaintiffs were properly allowed interest on the judgments rendered in their favor in Illinois against the gas company. R. S., sec. 2725; *Deen v. Crum*, 46 Ill. 73; *Hopkins v. Shephard*, 129 Mass. 600; *Hill v. Grigsby*, 32 Cal. 60.

SHERWOOD, J.—This is a suit in the nature of a creditor's bill. The plaintiffs, Shickle, Harrison & Company, are judgment creditors of the East St. Louis Gas Light & Coke Company, a foreign corporation organized under the laws of Illinois. Watts is the sole appellant here. He and the plaintiffs are residents of the state of Missouri. Watts is the owner of twelve hundred shares of the capital stock of the foreign corporation mentioned. The basis of this proceeding is, that Watts is the owner of said stock; that the par value of the same has not been paid in full, and the purpose of this proceeding is, to compel him to pay the judgment debt due the plaintiffs, they having exhausted their remedy at law against the corporation.

The controlling question in this case is, whether Watts can be treated as the holder of unpaid stock in

the corporation. In 1874 he contracted with the corporation for the erection of its gasworks in East St. Louis. For his work he was to receive eighty-three thousand dollars. Fifty thousand dollars of this sum was to be paid him in the mortgage bonds of the company, secured by first lien on the "works, property, and franchises of the corporation," and the residue, thirty-three thousand dollars, was to be paid in cash. Concerning the cash payment, thirty-three thousand dollars, it was stipulated that thirteen thousand dollars "should be payable from the holders of the original fifty thousand dollars of stock, and the other twenty thousand dollars only from the other stock thereafter to be disposed of by the corporation." And it was further stipulated, "that if the corporation failed to dispose of sufficient new stock to realize, from an equal assessment upon all stock, enough to pay twenty thousand dollars when so due," that then the defendant should "receive in lieu of said twenty thousand dollars, cash stock of the corporation at the same rate as other stockholders in full compensation for his dues."

Watts built the works as agreed upon, receiving from the corporation forty thousand dollars in its bonds and realized from their sale $38,504.16. The contract evidently contemplated that the sum of thirteen thousand dollars should be raised by an assessment upon the fifty thousand dollars of old stock, but it was never raised and paid him. Nor did the company succeed in selling any part of the new stock, from the sale of which twenty thousand dollars was to be raised and paid him. It does appear, however, that at various times the corporation issued to Watts, and he received fifteen hundred shares of what is termed new stock. The par value of these shares was twenty-five dollars each and amounted in the aggregate to thirty-seven thousand five hundred dollars.. He sold three hundred of these shares and now retains twelve hundred. No settlement, it seems, was

ever made between Watts and the corporation; but that matter is still open and unadjusted between them.

Concerning the reasonable cost of constructing the gasworks, such as the contract contemplated, there was a good deal of testimony introduced. The estimates of the cost of similar works varied from thirty-five thousand dollars to forty-five thousand dollars. But looking at all the testimony, fifty thousand dollars would seem to be a reasonable charge, inclusive of a fair allowance for the profit of the contractor. Relative to the terms upon which the fifteen hundred shares were issued and received by Watts, the contract provided that the stock should be issued to him "at the same rate it was issued to other stockholders." He makes no claim that the stock was issued to him in satisfaction of his demand, and the account between himself and the company still remains open and unadjusted. The other stockholders obtained their certificates of stock upon payment of $12.50 per share, and, as before stated, he was to receive his shares at the same rate that they did.

It results from this that, inasmuch as between Watts and the company he obtained his stock at $12.50, giving the company credit only at that sum per share, which for the fifteen hundred shares would amount to a credit of $18,750 paid to him with stock—taking this as the proper basis of computation, this would leave him still liable to the creditors of the corporation to the amount of fifteen thousand dollars on the twelve hundred shares which he still retains. This must be so if it be true that, notwithstanding any understanding or agreement between the defendant and other shareholders and the corporation, that they were not to be assessed any further on their shares, is of no avail as against corporate creditors. And this seems to have been the nature of the agreement between the corporation and its various shareholders; i. e., that they were to receive their shares on payment of fifty per cent. of their par value, and so the

court below has found. And that court has also found that the contract price for the gasworks built was some seventy per cent. beyond a fair and reasonable price, and that the sum already paid on account of those works, including bonds and stock, amounts to $57,254, or about $7,254 more than the reasonable value of such works.

I. Upon the premise so well established, that the capital stock of a corporation is a trust fund for the benefit of its creditors, the very reasonable deduction has been made by the courts that, where an agreement is entered into between a contractor and a corporation, whereby the former is to perform work for, or furnish material to, the latter, and to take unpaid stock in part or in full payment, that such contractor, whether for labor or material, can only charge therefor the reasonable market value for such labor or material thus given in exchange ; and that all agreements by the corporation to pay more than such reasonable compensation will be disregarded and held for naught by the courts when the rights of creditors intervene. And this is the case, even though no fraud be proven. Thompson Liab. Stock., secs. 127, 201 ; *Boynton v. Hatch*, 47 N. Y. 225 ; *Talmadge v. Iron Co.*, 4 Barb. 382 ; *Van Cott v. Van Brunt*, 2 Abb. N. C. 283 ; *Osgood v. King*, 42 Iowa, 478 ; *Chouteau v. Dean*, 7 Mo. App. 214 ; *Kehlor v. Lademan*, 11 Mo. App. 550 ; *Carr v. LeFevre*, 27 Pa. St. 413.

And the same rule holds in this class of cases in regard to partial payments for stock in labor or material, as holds when payments *pro tanto* are made upon shares of stock in cash. In regard to which latter payments it is abundantly settled by authority that they will not avail as again st creditors only to the extent and only in proportion as such payments approximate the par value of the stock taken. *Upton v. Tribilcock*, 91 U. S. 45, and cases cited ; Thompson Liab. Stockholders, sec. 201, and cases cited ; *Gill v. Balis*, 72 Mo. 424.

II.   Pursuing the same line of thought respecting the capital stock of a corporation being a trust fund, it has been ruled that where stock held by a stockholder which has not been fully paid, that such a debt is deemed in equity part of the capital stock for all the creditors, and through which the corporation is a "going concern," it may call the unpaid balance in, and though the stockholder during that period of prosperity may set off against the company any demand he may hold against it, yet when the company becomes insolvent, the rule changes, and then the creditor stockholder cannot appropriate his unpaid balance in exclusive satisfaction of his own claim, for this would be to give him an undue preference altogether inconsistent with the idea of a trust fund for the benefit of all the creditors, and for that reason to be shared by all of them *pari passu.*   Thompson Liab. Stock., sec. 386, and cas. cit.

From this premise, it must needs follow that Watts cannot offset against his stock liability, amounting to some fifteen thousand dollars, what appears to be due him on his contract with the corporation.   This would be true according to the authorities, even if his contract had been made on a fair and reasonable basis, and *a fortiori*, must this be so, when the contract actually made far exceeded any such reasonable sums.

III.   Relative to the *forum* in which plaintiffs seek to obtain relief:   They had pursued their remedy at law in Illinois, recovered judgments, issued executions which were returned *nulla bona,* and the whole assets had been placed in the hands of a receiver. It is not seen how plaintiffs could have proceeded in any other *forum* than in a court of equity in order to succeed in this state against stockholders resident here.   For this reason the unpaid balances in the hands of Watts must be regarded as equitable assets recoverable alone in a court possessed of chancery jurisdiction.   Moreover, Watts

in the circuit court, did not plead a remedy at law, and his answer denying any knowledge or information sufficient to form a belief whether plaintiffs had a remedy at law is not tantamount to an affirmative allegation that such remedy existed. The rule is that when a party proceeded against in a court of chancery fails to plead a remedy at law, he cannot raise the point at a later stage of the case. *Blair v. Railroad*, 89 Mo. 383.

IV. The gist of this proceeding and of plaintiffs' right to the relief they seek consists in this: That Watts is owner and holder of unpaid stock in the insolvent corporation. This causes a liability to attach to him as a stockholder, and it is quite immaterial whether he is in fact a subscriber or not. The taking of certificates of stock implies a promise to pay. *Webster v. Upton*, 91 U. S. 65; *VanCott v. VanBruntt*, 2 Abb. N. C. 283; *Chouteau v. Dean*, 7 Mo. App. 215. And stockholders may become such by direct purchase from the company or what is equivalent thereto, by exchanging labor or property for stock. Thompson Liab. Stock., sec. 305, and cases cited. And even if the charter of the corporation, as in this instance, prescribes that persons wishing to become members shall subscribe for shares upon the stock books, this by no means prevents a person from becoming a shareholder by purchasing shares and receiving a certificate for the same. Morawetz Corp. (2 Ed.) sec. 69. No sound distinction can be taken between a purchaser of, and a subscriber for, stock, and the authorities generally take none.

V. The judgments in the case at bar were entitled to full faith and credit in this state (R. S., 1879, sec. 2735), and had the same force and dignity, *pro hac vice*, as if domestic judgments. Freem. Judg., sec. 575. The object of getting the judgments and issuing the executions thereon, was to demonstrate that, so far as concerned proceedings against the corporation, the

plaintiffs were remediless. The judgments, etc., intro-
duced established this fact as conclusively as though
they were domestic judgments. It has been ruled in
this state that, though our statute required judgment of
dissolution before proceedings could be had against a
stockholder, yet that, where dissolution sufficiently
appeared *aliunde*, obtaining a judgment dissolving the
corporation was not necessary. *State Savings Institu-
tion v. Kellogg*, 52 Mo. 583. So in this case a court,
and especially a court of equity, which regards substance
and not form, would not require the plaintiffs, having
recovered judgments in the foreign jurisdiction, which,
proving unavailable by reason of the insolvency of the
foreign corporation, should be required again to go
through the same barren and meaningless ceremony in
this state, merely because service could be had here on
an officer of the insolvent corporation.

VI.   The circuit judge at first did not allow interest
on the judgments on which this proceeding is based,
on the ground that the statute of Illinois allowing six
per cent. interest was not offered in evidence at the
hearing, but subsequently he allowed interest, and the
question is, was his ruling in this particular correct?
Our statute makes provision that: "Interest shall be
allowed on all money due upon any judgment or order
of any court from the day of rendering the same until
satisfaction be made by payment," etc. R. S. 1879, sec.
2725. The same section makes provision that the ordi-
nary rate of interest of judgments shall be six per cent.
It seems to me this language is broad enough to cover
not only the judgments of our own domestic tribunals,
but to include within its purview, as it certainly does
within its letter, "any judgment  *  *  *  of any
court."

Why should not this be the case? Certainly our
legislature cannot be ignorant of the fact that suits
upon judgments of our sister states are daily brought in

our courts, and it may have been contemplated by the
legislative mind to make a uniform rule as to the rate
of interest such judgments should bear from the time
of their rendition in a sister state until they become
merged into judgments rendered in our own tribunals.
If such was the intention of the legislation in question,
it certainly conforms to those constitutional and legis-
lative provisions which place judgments of our sister
states "on the same footing as domestic judgments."
In Massachusetts the rule has long been established,
unaided by statutory legislation, that, in suits on judg-
ments of sister states, interest, by way of damages, shall
be allowed on such judgments when sued on in courts
of that state.    *Baninger v. King*, 5 Gray, 9.    In the
case just cited six per cent. interest was allowed, but
the plaintiff claimed seven per cent., that being the rate
allowed on the judgment in New York.    He was told,
however, by the court that the six per cent. was dam-
ages, not interest, and that the rule of damages is that
of the court where action is brought.    To the same
effect see *Hopkins v. Shepard*, 129 Mass. 600, where
suit was brought on a judgment rendered in Maine, and
though no evidence was offered in the lower court con-
cerning the law of Maine as to interest on judgments,
that court rendered judgment for the amount of the
main judgment, and six per cent. interest thereon, and
this judgment was affirmed.

In an earlier case in that state (*Williams v. Am.
Bank*, 4 Met., 317), where speaking of the subject of
interest, Shaw, C. J., said:    "Interest is allowed not
only on strict legal grounds, where there is a contract
for the payment of interest, or by way of legal damages
where there is a tortious detention of a debt, but upon
considerations of equity and natural justice, when a
party is entitled to the payment of money, which, owing
to various causes, he cannot obtain.    The subject of
interest was put upon rational and intelligible grounds

in the case of *Robinson v. Bland*, 2 Bur. 1085. It was put upon the ground that interest should be allowed on a loan of money after the time fixed for payment, because it was equitable, and in order to assimilate the practice of courts of law to those of equity. And, in the same case, it was held that, in *assumpsit*, the interest should not stop at the commencement of the action, but be brought down to the time of the assessment of the damages. The true principle there recognized is, that in justice the interest should be carried down to the time of the payment of the debt, but as that cannot be done it should be brought down to the latest period at which the court can act upon the subject. The same case recognizes the principle that, where interest is recoverable, except in special cases where it is payable by contract before the principal is due, interest is incident to the debt, constitutes part of it and passes with it; otherwise, upon no principle could the plaintiff recover in an action money not due when the action was brought."

The rule which prevails in Massachusetts, as already quoted, is also the rule in New Hampshire. *Mahurin v. Bickford*, 6 N. H. 567. In 3 Com. Dig. 321, citing 1 Rol. 575, 1, 10, it is said: "In *detinue* the plaintiff may recover against the garnishee more damages than were alleged in the declaration, because he recovers for delay after his declaration." These authorities and the reasons they give support the conclusion reached by the lower court in the matter of interest.

VII. There is but one more point remaining to be noticed: Watts became a stockholder and owner in 1874. Plaintiffs' judgments were obtained in 1880 and 1881, and because this is so it is contended that they should not have prevailed in the lower court. There is no merit in this contention if it be true that unpaid stock is a trust fund for the benefit of the creditors of the corporation. If it be a trust fund, then its character remains

unchanged and awaiting demands which may arise against it, precisely as if it had been paid into the corporate coffers instead of remaining in the hands of the person who still remains a debtor to the corporation, to the extent of his unpaid balance.

The judgment is affirmed. All concur, except Ray, J., absent.