Johnson, J.
The only question presented by this record is, can a stockholder in a savings and loan association, organized under the statutes of this state, when the company becomes insolvent, *232 set off as against its assignee for the benefit of its creditors, a claim for money, which he has on deposit with the loan association, against his liability for the unpaid part of his stock subscription?
The courts below held that he could not do so, notwithstanding the general terms of our statute on the subject of set-off. They adopted and applied the doctrine, that the capital stock of a corporation, constitutes a trust fund for the benefit of the creditors of the company, and that a subscriber to its stock cannot, in a suit brought to collect his subscription, set up a counterclaim or set-off. This doctrine is stated in 3 Thompson on Corporations (1 ed.), Section 3787, thus:
“The first reason generally given for the rule denying the right of set-off after a corporation has become insolvent, is the theoretical reason which often operates to deny the right of set-off in courts of law, which is, that there can be no set-off unless the debts are mutual and in the same right. Briefly explained, the meaning is, that when the assets have been impressed with the quality of a trust fund for the equal benefit of all the creditors, their custodian, whether the corporation, its directors, a receiver, assignee, or other liquidator, holds them, not in the right of the corporation against which the set-off is claimed, but in the right of the creditors. * * * Such a debt, as we have seen, is deemed in equity a part of the capital stock of the company, and is a trust fund to be devoted to the payment of all its creditors; and hence, whilst the company, as long as. it continues *233 a going concern, may call it in, and the stockholder, without doubt, set off against it any demand he may have against the company, yet when the company becomes insolvent, and there is not enough to satisfy all the creditors, this trust fund manifestly cannot be appropriated by a creditor who is a stockholder, to the exclusive payment of his own claim.”
This view of the law has been approved and followed by many authorities in this country, among which are 1 Cook on Corporations (6 ed.), Section 193; Sawyer v. Hoag, 17 Wall., 610; Welch v. Sargent, 127 Cal., 72; Killen v. Barnes, 106 Wis., 546; Richardson v. Merritt, 74 Minn., 354; Efird v. Piedmont, etc., Co., 55 S. Car., 78; Wilkinson v. Bertock, 111 Ga., 187; Shickle v. Watts, 94 Mo., 410.
The trust fund theory as to the capital stock and assets of corporations, seems to have had its origin in the ingenuity of Judge Story, who announced it in Wood v. Dummer, 3 Mason (U. S.), 308, although in that case the doctrine was not carried to the extent, to which later cases have gone, in denying to the stockholder a set-off, in cases to enforce his liability as a stockholder, or for unpaid stock. In that case, an incorporated bank divided three-fourths of its capital stock before the expiration of its charter, among the stockholders, without providing funds which ultimately were sufficient to pay its outstanding bank notes. It was held that the capital stock was a trust fund for the payment of the bank notes and might be followed into the hands of the stockhold *234 ers. The division of the stock under such circumstances, was a fraud on the creditors.
The rule in question here, was announced by the supreme court of the United States, in Sawyer v. Hoag, 17 Wall., 610. Sawyer was liable for $4,250.00 on stock subscription to an insurance company. The company became insolvent, and Sawyer bought for a small sum, a certificate of an adjusted loss claim of $5,000.00 against the company, which he sought to have set off against his unpaid stock after the company was adjudged bankrupt. The court held he was not entitled to the set off; that the subscription for stock was a trust fund for the creditors which could not be appropriated by the debtor to the exclusive payment of his claim. And the court say that such transaction “should be subject to a rigid scrutiny, and if found to be infected with anything unfair towards such third person, calculated to injure him, or designed intentionally and inequitably to screen the stockholder from loss at the expense of the general creditor, it should be disregarded, or annulled, so far as it may inequitably affect him.”
As already stated, these decisions were followed, in many other cases until the doctrine as stated above, was widely accepted. However, in a more recent case in the supreme court of the United States, Clark v. Bever, 139 U. S., 96, there was a modification of the rigid rule that the stockholder must, under all circumstances, pay the full face value of the stock, and that the stock at its face value, is a trust fund for the benefit of the creditors, which the stockholder may be compelled to *235 make good. In that case, an Iowa railroad corporation being indebted to a construction company-in the sum of $70,000, which it was unable to pay in money, had a settlement with the latter, whereby the debt was paid in shares of the stock of the railroad company at the par value of $350,000. The stock was taken at 20 cents on the dollar but was not at the time worth anything in the market. Greene, a member of the construction company, received 910 shares as his part. Subsequently the railroad was sold under a decree of foreclosure, and, Greene having died, suit was brought by a creditor of the company to hold his estate liable for the difference between what was paid for the stock and its face value, on the ground that the stock of the corporation was a trust fund for creditors, and that as between creditors and stockholders the latter were bound to account for its par value, without reference to the good faith of the transaction. But the court refused to so hold, and denied the relief.
A similar conclusion was arrived at in Fogg v. Blair, 139 U. S., 118, the extent to which the court went being that unpaid subscriptions to the stock of a corporation, constitute a trust fund for the benefit of its creditors which may not be given away or disposed of zvithout consideration, or fraudulently, to the prejudice of such creditors.
There have been a number of holdings, in cases which involved the right of the stockholder to a set-off, where his liability for unpaid subscriptions or his statutory liability as a stockholder was being enforced, in which the set-off was allowed. *236 Among these are: Cahill v. Original Big Gun Assn., 94 Md., 353; Talmadge v. Fishkill Iron Co., 4 Barb., 392; Christensen v. Colby, 43 Hun, 362; Fidelity Ins., Trust & S. D. Co. v. Mechanics Savings Bank, 97 Fed. Rep., 297; Ball v. Anderson, 196 Pa. St., 89; Wheeler v. Millar, 90 N. Y., 359.
In Cahill v. Big Gun Assn., supra, which was a suit to enforce the statutory liability of a stockholder, the court, in its opinion, cites a number of cases in support of its view.
In that case the following language used in Pierce v. Topeka Commercial Security Co., 60 Kans., 164, is quoted with approval:
“It is strongly contended that the claims .of a stockholder against the corporation do not constitute a legal set-off, because of a want of mutuality between the parties to the action. A claim of the stockholders is not a set-off in its technical sense, but it is an equitable defense which he is entitled to make. When he becomes a bona ñde creditor of the corporation he is clothed with the same equity as contract creditors.”
Although there is a distinction between a proceeding to collect unpaid subscriptions for stock, and one to enforce the statutory liability of a stockholder, they are both for the purpose of creating a fund for the protection and benefit of the creditors of the company. The suit to enforce the statutory liability, may be brought by creditors onlv after the insolvency of the corporation, and for the purpose of creating a fund to be applied to the payment of the debts of the company after *237 it has been disclosed that the corporation is unable to pay them. It would seem that if a stockholder were entitled to set off a claim against the company, against his statutory liability in a proceeding to create such fund for the creditors, it would a fortiori be just and equitable, to allow him to set off a claim which he had in good faith against the company, in a proceeding by an assignee or receiver to enforce an unpaid subscription to the stock for the same purpose. In the latter case the relation of the parties is mutual. His claim is due to him from the corporation and the claim for unpaid stock is due from him to the corporation. There has been no ruling by this court on this question, although it has been in constant harmony with other jurisdictions, in holding that the property and assets of a corporation are a trust fund for the benefit of its creditors, and that, if misappropriated or diverted, the court will follow it as far as it can be traced. But the question still remains, whether, in the ascertainment of the amount of the fund, a stockholder would be justly entitled to the set-off, as in other cases, under our statute.
It must be noted that the set-off claimed in this case is a deposit in a loan and savings association, against indebtedness for the unpaid part of subscriptions to the stock of such association. It is not a case in which there is any element of fraud. The stock was not issued under the pretense of being or purporting to be, fully paid, when in fact it was not paid for. There was no contrivance to release the debt for the stock, and substitute a loan therefor. It is not a case in which a corpo *238 ration had held itself out to the public as having a larger paid-up capital, than it actually had. Nor is it a transaction, similar in any of its phases to those out of which the controversies arose, in which the rule contended for here was originally, and in many of the later cases, declared and enforced. This savings bank was organized under Section 3797 et seq., Revised Statutes. The statute prescribes the method of the organization and operation of such institutions. It provides that no such association shall commence business until at least one half of each subscription has been fully paid up. There is no claim that this was not done, and the presumption is that it was done. The finding of facts shows that 'the association was duly organized under the statute.
There is no claim that it ever pretended that any more than 50 per cent, of each subscription had been paid in, or that anyone ever gave credit, on the faith that all of its stock had been paid in full.
Section 3799, Revised Statutes, provides that the board of directors may prescribe the terms, on which deposits shall be received and paid out and the manner of conducting the business, and that such rules and regulations, shall be obligatory on the depositors. Every depositor and every creditor doing business with such banking company, is presumed to do so with knowledge of the laws relating to it. It is common knowledge that many of the subscribers to the stock of such savings associations, make their deposits therein, with the intention and understanding that such deposits *239 shall be made and used for the purpose of paying for the stock, and that such associations have rules and regulations with reference to deposits and to the conduct of their business generally. Of course this bank could, at any time, have called in the balance of these stock subscriptions, and the depositors would have been entitled to set off their deposits against the claim. And in the consideration of this question it must be noted, that, under the rule in Ohio, the deposits were the property of the bank from the time of the making of the deposit. In Bank v. Brewing Company, 50 Ohio St., 151, it is held that: “Money received by a bank on general deposit becomes the property of the bank, and its relation to the depositor is that of debtor, and not of bailee or trustee of the money.” At page 158 of the decision, it is said: “Our statute secures the right of set-off to parties sustaining the relation of debtor and creditor, between whom there are such cross demands, and those existing between banks and their customers are not excepted from its operation; so that, if Schlegel, when the check was drawn out, had brought an action on his claim against the bank, the latter could have set off against it the debt which Schlegel owed the bank. And it is clear the right of set-off was not defeated or impaired by the check, even if it be treated as an assignment. The statute plainly protects the right of set-off, when it existed between the parties, notwithstanding the assignment, by either, of his demand.”
And at page 159: “As we have, seen, the funds on general deposit in a bank, are the property of *240 the bank. Properly speaking, the right, in such case, is that of set-off, arising from the existence of mutual demands. The practical effect, however, is the same. The cross demands are satisfied so far as they are equal, leaving whatever balance that may be due on either, as the true amount of indebtedness from one party to the other.”
Section 11321 General Code, on the subject of counterclaim and set-off, is definite and comprehensive: “When cross-demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by assignment by the other, nor by his death. The two demands must be deemed compensated so far as they equal each other.”
The set-off provided for in that section, available against a party, is equally available against his assignee for the benefit of creditors.
In Hade v. McVay, Allison & Co., 31 Ohio St., page 231, in which it was claimed that a set-off could not be made as against a receiver of a national bank, the court, at page 238, say: “The receiver holds to the bank and its creditors the relation, substantially, of a statutory assignee. A right of set-off, perfect and available against the bank at the time of his appointment as receiver, is not affected by the bank’s insolvency. He succeeds only to the rights of the bank existing at the time it goes into liquidation.”
*241 In Armstrong, Receiver, v. Warner, 49 Ohio St., 376, in which a set-off was allowed the debtor of the bank of which Armstrong was receiver, it is held: “The allowance of such set-off, is not the creation of a preference by the bank, but the ascertainment merely of the just amount due on the debtor’s obligation, and may be enforced against the receiver of the bank.”
The same rule was enforced in Second Natl. Bank v. Hemingray, 34 Ohio St., 381.
In announcing a similar holding in Barbour v. The Bank, 50 Ohio St., page 101, the court say: “The argument, that by allowing the judgments to be set-off, the fund for the benefit of the creditors of the shoe company will be thereby diminished, resulting in an inequality of distribution among the creditors, does not commend itself to us. Upon equitable grounds we may apply the language of the vice-chancellor, in the matter of the Receivers of the Globe Ins. Co., 2 Edw. Ch., 625: ‘A set-off in such case is not a means of paying one debt in preference to other debts which the bankrupt or insolvent owes; for, to the extent of the demands set off or compensated, there was no debt — from the moment they were contracted, they extinguished each other. Hence, the operation of the set-off is, not to pay, but to ascertain a debt made up of the difference between the amounts of respective debits and credits.’ ”
The case of Gates, Admr., v. Tippecanoe Stone Co., 57 Ohio St., page 60, relied on by the defendant in error, we do not think assists in the solution of the question made here. In that case *242 the members of a partnership created a corporation, fixing its capital stock at a sum equal to an inflated value placed on the partnership property. They elected themselves managing officers, transferred the partnership property to the corporation at the inflated value, in exchange for its entire capital stock, which they caused to be issued as fully paid up to the partners, in proportion to their interest in the partnership. The corporation becoming insolvent, the court held that the transaction was a fraud on the corporate creditors, and held that each partner should be regarded as an original subscriber for so much of the stock as Avas thus issued to him, and credited on his subscription for the actual value only, of his interest in the partnership property, transferred to the corporation, in payment of such subscription, and that the balance after applying this credit, should be deemed a debt due from him to the corporation, and therefore corporate assets. Of course the ground upon which the decision in that case was put was the fraudulent transaction which was involved in the formation of the company. The case was different from this case. Here, there is no fraud in the transaction. In that case, however, the court credited the subscriber with the value of the property which he actually put into the company, and charged him with the balance due on the subscription. In this case, the subscribers are really asking that the same thing be done, and that a balance shall be struck between the amount of their deposit, and the amount of their subscription.
*243 We have no disposition to question the soundness or the valuable effect, of rules which throw around the assets of corporations every proper safeguard for the protection of their creditors, and which hold stockholders who compose them, and directors and trustees who manage them, to strict accountability in reference to all transactions concerning them. The astonishing rapidity with which these corporations have grown, in keeping up with the development of the commercial and industrial business of the country, requires the application of salutary legal principles to these new conditions.
As was said by the court in Clark v. Bever, 139 U. S., 96, supra: “When the interest of creditors require, those who hold shares of stock in a corporation, purporting to be, but which are shown not to have been, paid for to the extent of their face value, should be held liable to pay for such shares unless it appears that they acquired the stock under circumstances that did not give creditors and other stockholders just ground for complaint.”
It is clear that under the Ohio statutes these depositors could have set off their deposits against any debt due to the bank, created in the usual course of business. In view of the nature of this association, the manner of its creation and operation, the relation its stockholders and depositors sustain to it, the freedom from every element of fraud in the case, the fact that creditors and depositors alike dealt with it, charged with knowledge of the statutory provisions relating to it, we *244 think it is not a case for the application of such a ruling as is contended for by defendant in error.
The judgments of the courts below will be reversed and the cause remanded, with instructions to allow the set-off shown in the report of the assignee.

Judgment reversed.

Davis, C. J., Spear, Shauck, Donahue and O’Hara, JJ., concur.