## COLGAN v. FARMERS' & MECHANICS' BANK.

[106 Pac. 1134: 114 Pac. 460: 117 Pac. 807.]

APPEAL AND ERROR—DECISIONS REVIEWABLE—DENIAL OF NEW TRIAL.

1. Refusal to set aside a judgment and to grant a new trial for abuse of judicial discretion is subject to review on appeal, notwithstanding Laws 1907, p. 313, § 6, now incorporated in Section 548, L. O. L., providing that an order setting aside a judgment and granting a new trial for the purpose of being reviewed shall be deemed a judgment or decree.

TRIAL—OBJECTIONS.

2. A party having a suitable occasion to object and except to anything considered detrimental to his interests must take advantage of it when it occurs, if he has knowledge thereof, as he will not be permitted to speculate on a favorable verdict and, if disappointed, seek to question the proceedings by a new trial.

NEW TRIAL—SCOPE OF REMEDY.

3. A defeated party by moving for a new trial may present for re-examination alleged errors to which exceptions have been duly taken, in order that the court by granting a new trial may correct any mistakes that may have been made, and thus avoid the necessity of taking an appeal.

NEW TRIAL—SCOPE OF REMEDY.

4. A motion for a new trial, when interposed by a defeated party, may make reviewable an exercise of the court's discretion respecting

any matter that has arisen from the impaneling of the jury until verdict, of which such party had no knowledge.

NEW TRIALS—BILL OF EXCEPTIONS.

5. In such case evidence of the prejudicial act or conduct must be submitted by affidavits or in some other substantial form, so that a memoranda thereof may be incorporated in the bill of exceptions.

APPEAL AND ERROR—MOTION FOR NEW TRIAL.

6. A motion of a defeated party for a new trial, so far as any action by the court thereon can constitute a final judgment and form the basis of an appeal, is limited to the question of discretion, for, since an appeal from the judgment will bring up all errors assigned, except as to matters occurring without the knowledge of such party until after the verdict is returned, a motion for a new trial is unnecessary in all other instances; for if errors occurred at the trial, and were excepted to by defendant, such matters can be considered on appeal from the judgment.

APPEAL AND ERROR—REVIEW.

7. The sufficiency of a complaint can be challenged for the first time on appeal.

APPEAL AND ERROR—SCOPE OF REVIEW.

8. The sufficiency of a complaint may be examined on an appeal from the judgment.

EXCEPTIONS, BILL OF—PREPARATION.

9. Section 170, L. O. L., provides that, if an objection is made to any ruling of the court and the truth of the statement thereof is not agreed on between counsel and court, the counsel may verify his statement thereof by his own oath and that of two disinterested persons, or by his own oath and that of the stenographer, and file the same as an exception to the ruling objected to. *Held* that, where the trial judge refused to adopt the formal written statement prepared, and an amended bill was prepared and certified to which was attached the rejected manuscript, the written statement of the objections and exceptions certified by the judge was controlling; no attempt having been made to secure a bill of exceptions in the manner prescribed by the statute.

CONTRACTS—BREACH OF ACTION—PLEADING.

10. A complaint stated that plaintiff, being the owner of certain land and indebted to a specified amount in consideration of the cancellation of the debt, executed to defendant a deed to the property under a contract, whereby it was provided that, if he procured a purchaser to buy the land for the amount of the debt, defendant, on receipt thereof, would execute a deed to the purchaser and permit plaintiff to keep the remainder of the consideration; that plaintiff obtained one who was willing to buy the land for more than the debt, and notified defendant that he had secured such purchaser, and offered to pay to defendant on the execution of the deed to the purchaser the amount of the debt, but that defendant refused to accept the payment or execute the deed, and stated that it had conveyed the property to another person in exchange for other lands, whereby plaintiff was damaged. *Held*, that the complaint was not insufficient, because it did not allege that defendant owned the property and was capable of conveying the title.

SALES—NATURE OF CONTRACT.

11. A sale is generally understood to mean the transfer of property for money.

EXCHANGE OF PROPERTY—WHAT CONSTITUTES.

12. A "trade" is synonymous with an "exchange," which signifies a transfer of one or more pieces of property for other property.

MORTGAGES—NATURE—EQUITABLE MORTGAGES.

13. Where a debtor transferred land to his creditor under a contract providing that if the creditor sold it for more than the debt, or if the debtor secured a purchaser who would pay more, the creditor would transfer it to the purchaser, and give the debtor any surplus, the conveyance and contemporaneous agreement constituted an equitable mortgage, and, in an action by the debtor for a breach, the creditor might set off the taxes and expenses in maintaining the property.

MORTGAGES—NATURE—EQUITABLE MORTGAGES—CONTRACT

14. Such agreement was not a necessary incident of the mortgage, but was a separate and independent contract; and an action at law would lie for its breach.

MORTGAGES—NATURE—EQUITABLE MORTGAGES—CONTRACT—BREACH.

15. The creditor's transfer of the land by way of exchange was a breach of the contract, and, when the debtor produced a purchaser able and willing to buy, his right of action was complete, and could not be defeated by the creditor's subsequent repurchase of the land and tender of a deed.

CONTRACTS—DEMAND—TIME FOR PERFORMANCE.

16. The rule that a party to a contract is entitled to a reasonable time after demand in which to perform, does not apply where by his own act he has made performance impossible.

From Marion: GEORGE H. BURNETT, Judge.

This is an action by George H. Colgan against the Farmers' & Mechanics' Bank of Woodburn. Plaintiff-respondent files motion to dismiss defendant's appeal from an order denying a new trial.     DENIED.

*Mr. Frank Holmes* for the motion.

*Mr. Thomas O'Day* and *Mr. E. P. Morcom, contra.*

MR. JUSTICE KING delivered the opinion of the court.

Plaintiff, by his counsel, moves to dismiss defendant's appeal from the order denying a new trial, and to strike from the files defendant's proposed bill of exceptions, containing Exhibit A. In support of the motion it is argued that the order denying a new trial is not "a final order affecting a substantial right," as used in Section

547, c. 162, p. 313, of the Session Laws of 1907, and that the proposed bill of exceptions, Exhibit A, is an incumbrance of the record, in that the bill of exceptions, as allowed by the court, contains all the record, from which it appears no objections nor exceptions were taken.

While the questions thus presented may be raised by motion, the points being new, involving the construction of an act which, in some respects, changes the rules of practice on appeal, it is of such vast importance to the trial courts, and bar generally, throughout the State, that we deem it best to defer action thereon until the cause may be presented on its merits, when we may receive the benefit of an oral discussion of the subject; and it is so ordered.                                          DENIED.

Decided March 21, 1911.

## ON THE MERITS.

[114 Pac. 460.]

Statement by MR. JUSTICE MOORE.

This is an action to recover money. The complaint states in effect that defendant is a domestic corporation; that on January 27, 1909, plaintiff was the owner of 50 acres of land in Marion County, describing the premises, and being then indebted in the sum of $2,669.40 he on that day, in consideration of the cancellation of such debts and the surrender of the evidence thereof, executed to defendant a deed to the real property, pursuant to a contract which, among other things, provided that if he could procure a purchaser who was ready, able, and willing to buy the land and pay the sum of $2,669.40 and interest thereon at the rate of 8 per cent per annum from January 27, 1909, to the time of such payment, the defendant, upon the receipt thereof, would execute a deed of the real property to the purchaser and permit the plaintiff to keep the remainder of the consideration,

if any; that plaintiff obtained James Stewart who, on May 15, 1909, then was, ever since has been, and is, ready, able, and willing to buy the land and to pay therefor $4,000, which sum is the reasonable value thereof; that on the day last named plaintiff notified defendant that he had secured such purchaser, and then offered to pay to it, upon the execution of a deed to Stewart, the sum of $2,669.40, with interest as stated, amounting to $2,734.66; that in violation of the terms of the agreement, defendant refused to accept the payment or execute a deed, and then stated that it had conveyed the premises to ——— Young in exchange for other lands, thereby causing plaintiff to lose the difference between the sum so offered by Stewart and the amount of the debt, or $1,265.34, for which judgment is demanded.

The answer denied the material averments of the complaint, and alleged that the parties entered into the contract mentioned, setting forth a copy thereof; that at all times since the execution of the agreement defendant has been and now is ready, able, and willing to perform all its conditions; and that in order to preserve the property defendant had incurred necessary expenses amounting to $756.27, giving the items thereof. A deed executed by defendant to Stewart conveying the title to the premises was tendered with the answer, to be delivered upon payment of the sum of $4,000. The prayer of the answer is that the purchaser be required to deposit in court the amount of his offer, to be applied according to the terms of the contract and in payment of such expenses.

The contract referred to states the consideration for Colgan's execution of the deed to the land as alleged in the complaint. The agreement also contains, in substance, the following provisions: (1) That the bank, as soon as a purchaser could be secured, would sell the premises at the best price obtainable and for a sum not less than its market value, notifying Colgan of the amount received, in order that he might have the benefit of any

sum obtained in excess of $2,669.40 and interest as stated; (2) that at any time prior to such sale by the bank, Colgan might redeem by paying the bank, or its assigns, such debt and interest; and (3) that, if Colgan could secure a purchaser who was ready, able, and willing to buy the land, the bank upon the·receipt of such debt and interest would convey the real property to the purchaser, and Colgan should receive the remainder of the consideration, if any.

The reply put in issue the material allegations of new matter in the answer, whereupon the cause was tried, resulting in a verdict and judgment for the sum demanded in the complaint. Thereafter defendant's counsel moved to set aside the judgment and for a new trial, based on several grounds which may be summarized as follows: Irregularity in the proceedings, whereby defendant was prevented from obtaining a fair trial; insufficiency of the evidence to justify the verdict and judgment, which are against law; errors in law occurring at the trial and excepted to by defendant; that the complaint does not state facts sufficient to constitute a cause of action; and that no tender of any money was made by plaintiff to defendant prior to the commencement of this action. This motion was denied, and defendant appeals from the judgment and from the order refusing to grant a new trial.                                        AFFIRMED.

For appellant there was a brief over the names of *Mr. Thomas O'Day* and *Mr. E. P. Morcom,* with an oral argument by *Mr. O'Day.*

For respondent there was a brief and an oral argument by *Mr. Frank Holmes.*

MR. JUSTICE MOORE delivered the opinion of the court.

Plaintiff's counsel, insisting that the action of the court last referred to is not reviewable, moves to dismiss the appeal from the order denying the motion to set aside

the judgment. The bill of exceptions does not contain any affidavits or other evidence to show wherein any irregularity in the proceedings occurred at the trial, or disclose that any motion was interposed for a judgment of nonsuit, or that any request was made for a directed verdict in favor of the defendant. No issue is raised by the pleadings as to any tender of money, nor is that subject referred to in the bill of exceptions. The question is suggested, however, in what was prepared by defendant's counsel as a transcript, but was not certified to by the trial judge.

1. In construing an amendment of the statute (Laws Or. 1907, p. 313, § 6) now incorporated in the Code (Section 548, L. O. L.), which provides that "an order setting aside a judgment and granting a new trial, for the purpose of being reviewed, shall be deemed a judgment or decree," it was held that the change thus made limited an appeal, in that particular, to an order granting a new trial: *Oldland* v. *Oregon Coal & Nav. Co.,* 55 Or. 340 (102 Pac. 596). It might seem to follow from that decision that if a new trial were not granted the party against whom the judgment was rendered could not predicate error on the court's action in that particular. It is argued by defendant's counsel that such interpretation is too narrow; that in selecting the jury, or at the trial, incidents may occur, and after the jury retires circumstances arise, of which the defeated party had no knowledge until after the verdict was returned; and that, considering together all the provisions embraced in the amendment of the statute (Laws Or. 1907, p. 311, §§ 1-6), the refusal of a court to set aside a judgment and to grant a new trial should constitute grounds for an appeal.

Before any alterations were made in the statute referred to, the power of a court to set aside a verdict and to grant a new trial was conceded, but the party who had prevailed at the trial could not have the order reviewed, since its effect was not final, in that it left the cause

in the same condition as though no trial had occurred. As an exercise of such power necessarily defeated the expectations of the prevailing party to reap the fruits, or to escape the consequences of a judgment, the statute was undoubtedly amended so as to make an order granting a new trial a final judgment, from which an appeal will lie.

Every party is entitled to a fair and impartial trial, and if he is materially prejudiced by any act or conduct occurring at the hearing of which he had no knowledge until after the verdict was returned, and could not have called the court's attention to the matter and secured a ruling thereon which, if adverse, could have been excepted to and thus assigned as error, a refusal to set aside a judgment, based on the verdict, and to grant a new trial must now, as before the amendment of the statute, be an abuse of judicial discretion which is subject to review on appeal.

In the case at bar, however, there is nothing in the bill of exceptions tending in any manner to show an abuse of discretion, so that if an "irregularity in the proceedings of the court by which the defendant was prevented from having a fair trial" occurred, as asserted in the motion to set aside the judgment, no proof thereof has been properly brought up for examination. If the evidence given at the trial was insufficient to justify the verdict, so that the judgment is against law, the court was not properly advised thereof by a motion for judgment of nonsuit or a request for a directed verdict for defendant, whereby all the testimony could have been certified and sent up for consideration.

2. In the trial of an action a party has an opportunity to object to anything occurring within his knowledge that may be regarded as prejudicial, and he can, upon calling the court's attention to the matter, secure a ruling which, if adverse and excepted to, may be reviewed on appeal. A party having a suitable occasion to object and except to anything considered detrimental to his interests must

take advantage of the harmful act or conduct when it occurs, if he has knowledge thereof, for he will not be permitted to speculate on a favorable verdict and, if disappointed, then seek to question the proceedings by a motion for a new trial.

3. The procedure sanctioned by the amendment of the statute under consideration permits a defeated party, by interposing a motion to set aside a judgment, to present for re-examination, at a time when more deliberation can be exercised than is afforded during the excitement of a trial, all alleged errors to which exceptions have been duly taken, in order that the court by granting a new trial may correct any mixtakes that may have been made, and thus avoid the necessity of taking an appeal.

4. A motion for a new trial, when interposed by a defeated party, may also make reviewable an exercise of the court's discretion respecting any matter that has arisen from the time the impaneling of the jury begins until a verdict is returned, of which such party had no knowledge.

5. In that case evidence of the prejudicial act or conduct must be submitted by affidavits, or in some other substantial form, so that a memorandum thereof may be incorporated in the bill of exceptions.

6. It would seem that the motion of a defeated party for a new trial, so far as any action by the court thereon can constitute a final judgment and form the basis of an appeal, is limited to the question of discretion, for, since an appeal from the judgment will bring up all errors duly assigned, except as to matters occurring without the knowledge of such party until after the verdict is returned, a motion for a new trial is unnecessary in all other instances; for if errors occurred at the trial and were excepted to by defendant, as stated in the motion herein, such matters can be considered on the appeal from the judgment.

7, 8. So, too, the sufficiency of a complaint can be challenged for the first time in this court, and may be examined on an appeal from the judgment.

9. Defendant's counsel submitted for settlement and allowance what purported to be a bill of exceptions, wherein the question of plaintiff's failure to tender any sum of money as a condition precedent to the execution of a deed to Stewart is set forth, and other alleged errors are assigned, to all of which exceptions were undertaken to be established. The trial judge refused to adopt the formal written statement so arranged, whereupon an amended bill was prepared and certified, to which was attached the rejected manuscript, designated as Exhibit A. The statute regulating exceptions contains a clause as follows:

"If an objection is made to any ruling of the court in the progress of a trial, and the truth of the statement thereof is not agreed upon between the counsel and the court, the counsel may verify his statement thereof by his own oath and that of two respectable and disinterested persons, or by his own oath and that of the stenographer who took the same down, and file the same as an exception to the ruling objected to." Section 170, L. O. L.

No attempt was made to secure a bill of exceptions in the manner thus prescribed, and such being the case the formal written statement of the objections and exceptions certified by the trial judge is controlling.

In construing another clause of the amended statute referred to (Section 201, L. O. L.), it was determined that an oral notice of appeal, in order to effectuate a transfer of the cause, should be given when the judgment was rendered, and not when the motion for a new trial was denied: *Barde* v. *Wilson,* 54 Or. 68 (102 Pac. 301). A careful re-examination of the several sections of the amended statute compels an adherence to the rule announced in *Oldland* v. *Oregon Coal & Nav. Co.,* 55 Or. 340 (102 Pac. 596). The motion to dismiss the appeal from

the order denying a new trial and to strike from the transcript Exhibit A, the consideration of which was postponed until the cause could be heard on its merits (*Colgan* v. *Farmers' & Mechanics' Bank*, 106 Pac. 1134), is now granted, that appeal dismissed, and the exhibit stricken from the files.

10. It is maintained that the complaint does not state facts sufficient to constitute a cause of action, for that it does not aver that defendant was the owner of the property and capable of conveying the title to Stewart. The complaint alleges that on May 15, 1909, when informed that a purchaser had been secured who was able, ready, and willing to pay $4,000 for the land, the defendant then notified plaintiff that it had traded and conveyed the premises to —— Young for other lands. This averment is denied in the answer. Based on this issue C. W. Huffman, an officer of the defendant, referring to a notice served upon it by plaintiff's attorney, testified as follows:

"Mr. Holmes came into the bank and presented this paper that he has just read in evidence, and I told him that we had traded the property off, and that we were willing to turn the property over that we received for it, if he wanted to take that and give us what we had against it. All we wanted was our money. He said he didn't want that; he wanted the original land. I told him that we were not in a position at that time to deed to him."

Frank Holmes, the attorney mentioned, in referring to the notice served on the defendant, corroborates the sworn statements made by the preceding witness, as follows:

"Before I served that upon Mr. Huffman at that time, Mr. Huffman notified me that they had traded the place away to a man by the name of Young, and that he could not deed to Mr. Stewart; and I asked him how much he received for it. He said he couldn't tell me; he didn't know; he had not sold it; they had only traded it for other lands; he didn't know how much the land was worth."

This testimony has been quoted as tending to show the evident intention of plaintiff's counsel in framing the complaint. It will be remembered that the contract entered. into by the parties authorized the bank to sell the land for the best price obtainable and to inform Colgan of the true amount received, in order that he might have the benefit of any sum secured in excess of $2,669.40, and interest thereon at the rate of eight per cent per annum from January 27, 1909, to the time of the sale. The agreement also stipulated that in case the bank sold the real property it might be redeemed by Colgan upon payment to the bank, or its assigns, of such indebtedness and interest.

11, 12. A sale is generally understood to mean a transfer of property for money. 7 Words & Phrases, 6291. A "trade," in the sense used by defendant's agent, is synonymous with an "exchange," which signifies a transfer of one or more pieces of property for other property. 3 Words & Phrases, 2546. A fair interpretation of the terms of the contract leads to the conclusion that the bank was authorized to execute a deed to the land for a money consideration and to account therefor to Colgan who, if dissatisfied with the sum thus received, was empowered to redeem the premises from such sale by paying the original debt and interest. Though a sale of the land might have been made under the circumstances mentioned in the agreement, the bank was powerless to exchange the premises for other property without Colgan's consent, but having done so, as alleged in the complaint and established by the testimony, the pleading comports with the theory of plaintiff's counsel and states facts sufficient to constitute a cause of action, without averring that defendant was the owner of the land or capable of executing a conveyance thereof to Stewart.

Plaintiff's counsel was permitted, over objection and exception, to offer in evidence a copy of the notice served

on defendant's agent that a purchaser had been secured who would give $4,000 for the land, and an offer to pay the bank the original debt and interest. C. W. Huffman, having testified as hereinbefore detailed, was asked by his counsel:

"What did you do afterwards in order to procure this deed?"

An objection to this inquiry, interposed on the ground that the answer had not tendered any issue on that subject, was sustained and an exception allowed. The witness was then asked:

"Were there any further transactions regarding this matter?"

"A.   We notified Mr. Colgan."

To this reply plaintiff's counsel objected, whereupon the court observed: "That would not be competent;" to which remark an exception was saved.

These constitute all the exceptions that were taken at the trial by defendant's counsel, as evidenced by the bill of exceptions, and believing that no error was thereby committed the judgment is affirmed.        AFFIRMED.

Mr. Justice BURNETT took no part in the trial or consideration of this cause on appeal.

---

Decided September 19, 1911.

## ON PETITION FOR REHEARING.

[117 Pac. 807.]

MR. JUSTICE MCBRIDE delivered the opinion of the court.

13.   The conveyance by Colgan and the contemporaneous agreement of the parties constituted an equitable mortgage of the premises, and had defendant, by a proper cross-bill, set up its equities, such as taxes and expenses of maintaining the property, they might have been prop-

Sig. 16

erly offset against plaintiff's claim for the difference between the $4,000 his purchaser was willing to pay for the property, and the amount of the claim held against him by the defendant.

14. The contract to allow plaintiff all he could obtain for the property over $2,669.40 and interest was not a necessary incident of the mortgage, but such a separate and independent contract that an action at law would lie for a breach of it.

15, 16. It was broken when defendant refused to make a conveyance, and disclosed the fact that it had conveyed away the property. Defendant was required under the contract to do either of two things: (1) To sell the property, and, after deducting plaintiff's debt, to pay him any surplus; or (2) to convey the property to a purchaser to be produced by plaintiff, and allow plaintiff to have the benefit of any overplus in the purchase price above the amount of his debt and interest, or it could have foreclosed by suit, as in other cases of foreclosure of mortgages. It did not choose to do either of these, but traded the land for other property, an act which was never authorized or contemplated by the agreement. It is claimed that defendant was entitled to a reasonable time, after demand, in which to make the conveyance, and this is generally true where an offer is accepted. But in the case at bar the offer was practically refused, and the plaintiff was informed that the land had been conveyed to other parties. Defendant could not put the property beyond its power to convey, and expect that a purchaser would wait for it to make a conveyance. When plaintiff produced a purchaser ready, willing, and able to buy, and defendant was voluntarily in a position where it could not accept the offer, by reason of having conveyed away the property, plaintiff's right of action became complete, and defendant could not destroy that right by sub-

sequently repurchasing the property and tendering a deed.

We still adhere to the views expressed in our original opinion.                    AFFIRMED:   REHEARING DENIED.