Argued February 25, affirmed March 16, rehearing denied April 27, 1920.

## CAMPBELL v. COIN MACH. MFG. CO.

(188 Pac. 197.)

**Corporations—Subscribers to Stock Liable to Pay on Express or Implied Promise.**

1. Persons subscribing to the capital stock in a corporation are obligated to pay therefor when regularly required to do so, and the taking of stock without subscription implies a promise to pay.

**Corporations—Reduction of Capital Stock by Reducing Par Value of Shares Entitled Subscriber to Rescind and Recover Money Paid.**

2. Where plaintiff agreed to purchase five shares of treasury stock of defendant corporation of a par value of $100 a share, defendant's capital stock consisting of $4,000,000, divided into 40,000 shares, and thereafter defendant reduced its stock to $400,000, consisting of 40,000 shares of a par value of $10, defendant thereby voluntarily put it out of its power to perform, and is liable for the money paid.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

This is an action to recover the sum of $375. After the defendant filed its answer, plaintiff moved for a judgment upon the facts as admitted, which was granted. Defendant appeals.

The defendant was a corporation with a capital stock of $4,000,000, divided into 40,000 shares of the par value of $100 each. On June 21, 1915, defendant, Coin Machine Manufacturing Company, an Oregon corporation, entered into a written contract with plaintiff, John F. Campbell, by the terms of which the company agreed to sell to Campbell, who agreed to purchase, "five shares of the treasury stock of the party of the first part of the par value of $100 per share, fully paid, and nonassessable," for the sum of $500, $100 of which was paid in cash

at the date of the contract and the balance was to be paid in installments of $25 per month. It was further agreed that, "when full payment shall have been received," the company would cause to be executed and delivered to Campbell "certificate or certificates, in due and regular form, evidencing the shares of stock so purchased and paid for." Campbell made his installment payments to the company, including the monthly payment due on the thirty-first day of May, 1916. In May, 1916, before the plaintiff completed his payments or became a stockholder in the corporation, without plaintiff's consent, the defendant corporation reduced its capital stock from $4,000,000 to $400,000, consisting of 40,000 shares, which it decreased the par value of from $100 to $10.                              AFFIRMED.

For appellant there was a brief over the name of *Messrs. Platt & Platt,* with an oral argument by *Mr. Harrison G. Platt.*

For respondent there was a brief over the name of *Messrs. Beach, Simon & Nelson,* with an oral argument by *Mr. Roscoe C. Nelson.*

BEAN, J.—Plaintiff contends that the corporation thereby placed itself in a position whereby it was unable to carry out the terms of its contract, and therefore he sued for the money paid to defendant on the contract.

It is the contention of defendant that there has been no material change in the stock which is the subject matter of the contract, and that plaintiff's proportionate interest in the assets of the corporation has not been changed, and that his right to ac-

quire a certain voting power as a stockholder in the corporation has not been altered.

It is stated in the brief of the learned counsel for defendant that the question raised in the present case has not so far as they can discover been directly passed upon in any reported case of the United States.

Mr. Thompson, in his work on Private Corporations (2 ed.), Section 3450, describes "shares of stock" as:

"The right to participate, in a certain proportion, in the immunities and benefits of the corporation, to vote in the choice of their officers, and the management of their concerns, and to share in the dividends or profits, and to receive an aliquot part of the proceeds of the capital, on winding up and terminating the active existence and operations of the corporation."

The same author, in Section 3436, describes treasury stock:

"Treasury stock is issued and outstanding stock that has come into possession of the corporation which issued it by purchase, donation, or in liquidation of a debt. If it has been issued full-paid, it remains so, even if sold again below par, and it is considered an asset of the corporation for bookkeeping purposes. * * *"

In 1 Cook on Corporations (7 ed.), Section 8, we find the following:

"Capital stock is the sum fixed by the corporate charter as the amount paid in or to be paid in by the stockholders, for the prosecution of the business of the corporation and for the benefit of corporate creditors. The capital stock is to be clearly distinguished from the amount of property possessed by the corporation."

Section 199 of the same volume reads, in part, as follows:

"The capital or capital stock of a corporation is the aggregate of the par value of all the shares into which the capital is divided upon the incorporation; it is the fund or resource with which the corporation is enabled to act and transact its business, and upon the faith of which persons give credit to the corporation and become corporate creditors."

Section 6683, subdivision 5, L. O. L., provides:

"That the articles of incorporation shall specify the amount of each share of such capital stock."

Section 6687, L. O. L., requires that in the organization of a corporation at least one half of the capital stock shall be subscribed before its directors are elected. Article XI, Section 3, of the Constitution of Oregon reads thus:

"The stockholders of all corporations and joint stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid, and no more."

Section 5833, L. O. L., is of the same purport. Section 6701, L. O. L., as amended by Laws of 1913, p. 465, authorizes a corporation by a vote of the majority of the stock of the corporation to increase or diminish its capital stock or the amount of the shares thereof, and authorizes the dissolution of such corporation.

At the date of the contract the defendant company had in its possession certain shares of treasury stock of the par value of $100 per share, from which fact it is assumed that such shares were originally subscribed and paid for at the rate of $100 per share. These shares, being treasury stock, are assets of the corporation which it could enter into a contract to sell.

It is stated in defendant's brief as follows:

"Each share represented a one forty-thousandth part interest in the particular enterprise for which the company was incorporated.

"Each share would give to the purchaser the right to cast one out of 40,000 votes upon any resolution presented to a meeting of the stockholders thereof, after he acquired title to the shares.

"Each share would give to him the same proportionate right to dividends declared and to profits earned and surplus provided for."

And further, in effect, that by the same token it would make him a proportionate loser in any decrease of the assets of the corporation; that five shares of capital stock of the par value of $10 per share, after the reduction of the capital stock of the corporation, would give the plaintiff the same right as five shares of the par value of $100 each before such decrease.

On the other hand, the plaintiff asserts, in substance, that, he having contracted for five shares of the capital stock of the par value of $100 in a corporation with a capital stock of $4,000,000, that it would not be a fulfillment of the contract for the defendant to deliver to him five shares of the capital stock of the par value of $10 each in a corporation with a capital stock of $400,000; and that the plaintiff has voluntarily put it out of its power to perform its contract, quoting Bishop on Contracts (2 enlarged edition) Section 1426:

"If one voluntarily puts it out of his power to do what he has agreed, he breaks his contract, and is immediately liable to be sued therefor, without demand, even though the time specified for performance has not arrived."

Plaintiff cites: *Branson* v. *Oregonian Ry. Co.*, 10 Or. 278; *Krebs* v. *Livesley*, 59 Or. 574 (114 Pac. 944, 118 Pac. 165, Ann. Cas. 1913C, 758), and *Colgan* v. *Farmers' etc. Bank*, 59 Or. 469 (106 Pac. 1134, 114 Pac. 460, 117 Pac. 807).

1. The general rule is, as provided by our statute, that persons subscribing for the capital stock in a corporation are obligated to pay therefor when regularly required to do so. The taking of certificates of stock without subscription implies a promise to pay for them: 4 Thompson on Corporations, § 3458; *Shickle* v. *Watts*, 94 Mo. 410 (7 S. W. 274); *Chouteau* v. *Dean*, 7 Mo. App. 210; *Van Cott* v. *Van Brunt*, 2 Abb. N. C. (N. Y.) 283.

Looking at the matter from one viewpoint, the decreasing of the capital stock was equivalent to the cancellation of $3,600,000 of the capital stock.

It is stated in 4 Thompson on Corporations (2 ed.), Section 3459:

"A solvent corporation has the right by vote of its stockholders to cancel stock subscribed but not paid for where existing creditors are not prejudiced thereby. And the corporation would have the right to cancel in this way where certificates are either void or voidable because of illegality in their issue, or it could reach the same end more regularly through a suit in equity to have the certificates declared void and canceled and their transfer enjoined. The money received for the stock must be returned."

2. As the learned counsel do not find precedents for a guide, let us look at the matter from a practical standpoint. The plaintiff contracted to invest $500 in the corporation with a capital stock of $4,000,000 or to furnish one eight-thousandth part of the capital.

The defendant proposes to plaintiff that he shall invest $500 in a corporation with a capital stock of $400,000 or furnish one eight-hundredth part of the capital.

Let us suppose that the company had made a second reduction in the capital stock of the same proportion as the one made and reduced the capital stock to $40,000 and the par value of the shares to $1 per share. According to the contention of the defendant the plaintiff's aliquot part would be the same, but he would be paying $500 for five shares of capital stock of the par value of $1 each, and investing one-eightieth part of the amount of the capital.

A still further reduction upon the same principle as that made by the corporation might be supposed, reducing the capital stock to $4,000 and the par value of each share to ten cents per share, which would require the plaintiff to invest one-eighth part of the capital stock of the concern. Under this last supposed condition each share of the capital stock would give the purchaser the right to cast one out of 40,000 votes at a meeting of the stockholders and each share would give the holder the same proportionate right to dividends declared and profits earned as the shares described in the contract.

It seems to us that the decrease in the capital stock and the change in the amount of capitalization admitted to have been made by the defendant company without the plaintiff's consent, and without his having a right to participate in such transactions, changed the corporation from a strong concern having a capital of $4,000,000 or at least one half thereof, if only one half of the capital stock was

subscribed, so that the corporation now is a smaller and weaker one with only one tenth as much capital stock as the one in which the plaintiff contracted to participate. It is apparent that the organization is changed; also, plaintiff's proportion of the amount of capital to be put into the concern is changed. In the ordinary course of business, parties subscribing to stock in the company after the reduction would be required to pay only $10 per share for the same kind of stock that plaintiff would pay $100 per share for if his contract is now enforced.

The five shares of capital stock of the par value of $10 proposed to be delivered to plaintiff by defendant would not comply with defendant's contract to deliver to plaintiff five shares of capital stock of the par value of $100 each in a corporation with a capital stock of $4,000,000. The plaintiff might desire to pledge his shares of stock as security for a loan, or he might desire to sell the same; and, to tersely express it, it would be entirely different stock. To present five shares of stock of the par value of $10 each in a corporation with a capital stock of $400,000 for a pledge, or sale upon the market, would be entirely different from an offer as a pledge or for sale of five shares of stock of the par value of $100 in a corporation with a capital stock of $4,000,000.

A stockholder is not only interested in participating in the business of the corporation as a stockholder and receiving dividends and profits or sharing in their losses, but is interested in the amount of capital to be used and the ability of the corporation to engage in large undertakings in order that there may be profits to divide.

At the time of the suit the defendant was voluntarily in a position where it could not perform its contract. It should therefore return the money paid to it by plaintiff.

It follows that the judgment of the lower court is affirmed.  AFFIRMED.  REHEARING DENIED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.